UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUSAN STEVENSON,

    Plaintiff,

v.                                                                          Case No: 6:17-cv-417-Orl-40DCI

CYPRUS AMAX MINERALS CO.,
IMERYS TALC AMERICA, INC.,
JOHNSON & JOHNSON CONSUMER
INC., PUBLIX SUPERMARKETS, INC.
and JOHNSON & JOHNSON,

    Defendants.
                                            /

## ORDER

This cause comes before the Court without oral argument on Defendant Imerys Talc America, Inc.'s Motion for Summary Judgment (Doc. 166 ("**Motion**")), and the response and reply thereto (Docs. 204, 227). With briefing complete, the matter is ripe. Upon consideration, the Motion is due to be granted in part and denied in part.

**I.    BACKGROUND**

This products liability suit arises from the death of Judith Minneci ("**Decedent**"). In 2012, Decedent was diagnosed with peritoneal mesothelioma; she died of that disease on May 24, 2015. (Doc. 196, ¶¶ 1–2; Doc. 200, ¶¶ 1–2). In February 2017, Plaintiff Susan Stevenson, Decedent's daughter and personal representative of Decedent's estate, initiated this suit. (Doc. 196, ¶ 3; Doc. 200, ¶ 3). Plaintiff alleges that Decedent's

mesothelioma was caused by her exposure to "asbestos and asbestiform fibers in . . . asbestos-contaminated talc and talcum powders."[1] (Doc. 1, ¶ 4 ("**Complaint**")).

The Complaint named eleven Defendants, all of whom allegedly "designed, manufactured, sold and/or distributed asbestos-containing [talcum powder] products" used by Plaintiff. (*Id.* ¶¶ 12–22). This Order only addresses the summary judgment motion filed by Defendant Imerys Talc America, Inc. ("**Imerys**"). Imerys is a Delaware corporation with its principal place of business in California. (Doc. 196, ¶ 4). Imerys' predecessor-in-interest mined and processed talc, and sold processed talc to Johnson & Johnson for one month in 1980 outside Florida.[2] (*Id.* ¶¶ 5–6).

The Complaint alleges that, between 1942 and 1985, Decedent was exposed to asbestos-contaminated talcum powder. (*Id.* ¶¶ 7; *see also* Doc. 203-2, 16:14–21, 19:7–21). In their depositions, Plaintiff and Plaintiff's brother testified that Decedent used Johnson & Johnson baby powder as part of her regular hygiene routine. (Doc. 203-2, 16:14–21; Doc. 203-3, 66:24–67:2, 67:22–25; Doc. 203-8, 10:6–10, 12:20–24). Plaintiff contends that Decedent's regular exposure to asbestos-laced powder brought about her death.

The Complaint asserts two claims against Imerys: (1) negligent failure to warn, and (2) strict liability for the manufacture and distribution of an unreasonably dangerous product. (Doc. 2). Imerys moves for summary judgment on both counts, in part for lack of

---

[1] Talc is a naturally-occurring mineral and the primary ingredient in Johnson & Johnson's Baby Powder. (*See, e.g.*, Doc. 166-4).

[2] Imerys is the successor-in-interest to Cyprus Industrial Minerals Company ("**Cyprus**"), the entity that itself sold talc to Johnson & Johnson in 1980. (Doc. 204, ¶¶ 11–14). For purposes of this Order, the Court attributes Cyprus' actions to Imerys.

personal jurisdiction over Imerys. (Doc. 166, pp. 7–12; Doc. 227, pp. 2–4). Plaintiff opposes, pointing to two contacts between Imerys and Florida that purportedly support the exercise of personal jurisdiction over Imerys: (1) Cyprus was registered to do business in Florida from February 1966 until 1978, and (2) Cyprus had a registered agent in Miami, Florida, during the same time frame. (Doc. 204-7). Plaintiff also maintains that Imerys knew or should have known that the talc it supplied to Johnson & Johnson would reach consumers in Florida. (Doc. 204, ¶ 40).

Because the personal jurisdiction inquiry is dispositive, the Court does not address the other arguments raised in the Motion.

## II.   STANDARD OF REVIEW

"In resolving a motion for summary judgment based upon lack of personal jurisdiction, the court is required to accept as true the allegations of plaintiff's complaint, and deny the motion if these allegations state a prima facie case of jurisdiction." *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). If the parties' allegations and evidence conflict, "the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Id.*

## III.  DISCUSSION

### A.   The Court Lacks Personal Jurisdiction Over Imerys

Imerys maintains that it is entitled to summary judgment on Plaintiff's claims because the Court lacks personal jurisdiction. (Doc. 166, pp. 7–12). Plaintiff opposes; acknowledging the absence of general personal jurisdiction but asserting the Court has

specific personal jurisdiction. (Doc. 204, p. 9 n.25, pp. 9–14).[3] In support, Plaintiff generally avers that its claims against Imerys arise from Imerys' contacts with Florida. (Doc. 204, ¶ 45). Plaintiff points to Imerys' predecessor-in-interest being registered to do business in Florida and having a registered agent in Florida from 1966 through 1978 as relevant contacts supporting personal jurisdiction.[4] (Doc. 204, ¶ 45). Also, Plaintiff contends that personal jurisdiction over Imerys can be justified by the fact that Imerys sold talc to Johnson & Johnson knowing that its talc would reach "people throughout the United States and the world." (*Id.* ¶ 40).

  *1. Legal Framework*

  A judgment rendered without personal jurisdiction is void. *Costello v. United States*, 365 U.S. 265, 285 (1961). "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Personal jurisdiction disputes involve a two-step inquiry: "(1) whether personal jurisdiction exists . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier,*

---

[3] Personal jurisdiction can be general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "'Specific' or 'case-linked' jurisdiction 'depends on an affiliatio[n] between the forum and the underlying controversy.'" *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (quoting *Goodyear*, 564 U.S. at 919).

[4] It is worth pointing out that Cyprus, Imerys' predecessor, was not registered to do business in Florida during 1980, the month when Imerys' predecessor-in-interest supplied talc to Johnson & Johnson. (Doc. 204-7). Cyprus' registration was withdrawn August 30, 1978. (*Id.*).

*S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). The parties' dispute centers on the second part: whether exercising jurisdiction over Imerys would violate the Due Process Clause.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The "minimum contacts" inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284.

"In products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality opinion). The primary inquiry for defendant manufacturers or suppliers is "whether the defendant's activities manifest an intention to submit to the power of a sovereign." *Id.* at 882. Where a defendant sends goods to a forum, it will be subject to personal jurisdiction in that forum only if the defendant "targeted the forum." *Id.* Mere foreseeability that goods would reach the forum does not suffice. *Id.*

To decide whether the exercise of specific personal jurisdiction over a nonresident defendant comports with due process, the Court applies a three-prong test, examining:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant

"purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier*, 736 F.3d at 1355. The plaintiff bears the initial burden of demonstrating the first two prongs. *Id.* If the plaintiff does so, the burden shifts to the defendant, who "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### 2. Prong 1: Relatedness

The first prong asks whether the claims at issue "arise out of or relate to" the defendant's contacts with the forum. *Louis Vuitton*, 736 F.3d at 1355. This inquiry is focused "on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)).

Plaintiff relies on two contacts between Imerys' and Florida to satisfy this prong: (1) Cyprus (Imerys' predecessor-in-interest) was registered to do business in Florida between 1966 and 1978, and (2) Cyprus had a registered agent in Florida during those years. (Doc. 204, ¶ 45; Doc. 204-7) Plaintiff's claims against Imerys do not "arise out of or relate to" Imerys' contacts with the forum. *See id.* at 1355. It is undisputed that Imerys did not supply Johnson & Johnson with talc during the years that Imerys was registered to do business in (and had a registered agent in) Florida, and Plaintiff does not assert that these contacts have anything to do with the claims at issue. Plaintiff's foreseeableness

6

argument is equally unavailing, both as it relates to the relatedness prong and the minimum contacts inquiry more broadly. [5]

### 3. Prong 2: Purposeful Availment

To decide the purposeful availment prong, district courts evaluate the nonresident defendant's forum contacts and gauge whether those contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357.

Imerys' contacts with Florida do not suggest it purposefully availed itself to—or otherwise *targeted*—the state of Florida. *See J. McIntyre*, 564 U.S. at 882; *Louis Vuitton*, 736 F.3d at 1357. First, Imerys' scant contacts with Florida are unrelated to Plaintiff's claims. Second, Plaintiff has made no showing that Imerys took affirmative steps to avail itself of the privileges of doing business in Florida. Finally, in the Court's view, Imerys' minimal contacts with Florida are not such that it would "reasonably anticipate being haled into court" in Florida. Accordingly, Plaintiff has likewise failed to establish the purposeful availment prong.

Since Plaintiff failed to carry its burden of establishing the first two prongs of the *Louis Vuitton* due process test, the Court need not address the third part. *See* 736 F.3d

---

[5]  While it might have been foreseeable to Imerys that the talc it mined would end up being used by Florida citizens, that alone is insufficient to vest this Court with personal jurisdiction over Imerys. *See McIntyre*, 564 U.S. at 883 ("'[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment.").

at 1355. As the foregoing analysis demonstrates, Imerys lacks the requisite "minimum contacts" with Florida to support the exercise of specific personal jurisdiction.

This conclusion is fortified by the U.S. Court of Appeals for the Eleventh Circuit's decision in *Banton Industries, Inc. v. Dimatic Die & Tool Co.*, 801 F.2d 1283 (11th Cir. 1986). In *Banton*, the court found that an Alabama district court lacked specific personal jurisdiction over a nonresident defendant component parts supplier that sold allegedly defective pulleys to the plaintiff in Alabama over the course of approximately four years. 801 F.2d at 1284.

Imerys' contacts with Florida are even more tenuous than the *Banton* defendant's. Imerys delivered its products to Johnson & Johnson outside of Florida, while the *Banton* defendant sent the pulleys to the plaintiff in Alabama. *See id.* Moreover, Imerys only supplied Johnson & Johnson talc for one month in 1980, while the *Banton* defendant sold parts to the Alabama plaintiff over a period of years. *See id.*

The Court is therefore satisfied that exercising specific personal jurisdiction over Imerys would violate the Due Process Clause, and that Imerys' Motion is due to be granted in part.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Imerys Talc America, Inc.'s Motion for Summary Judgment (Doc. 166) is **GRANTED IN PART**.
    a. The Motion is **GRANTED** insofar as it moved for summary judgment for want of personal jurisdiction.
    b. In all other respects, the Motion is **DENIED**.

2. The action is **DISMISSED** as against Defendant Imerys Talc America, Inc.

**DONE AND ORDERED** in Orlando, Florida on July 10, 2018.

Copies furnished to:

Counsel of Record